UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN RICHMOND,

    Plaintiff,                                    Civil Action No. 08-13221

v.                                             HON. JOHN FEIKENS
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL      U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Dawn Richmond brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for WIDOW'S INSURANCE BENEFITS ("WIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment DENIED.

## PROCEDURAL HISTORY

On November 9, 2005, Plaintiff filed a protective application for WIB, alleging an onset date of September 15, 1993 (Tr. 52). The prescribed period for disability began on July

-1-

31, 1996 and ended on July 31, 2003 (Tr. 52).[1]  After the initial denial of the claim, Plaintiff timely requested an administrative hearing, held on November 5, 2007 in Detroit, Michigan with Administrative Law Judge ("ALJ") Richard L. Sasena presiding (Tr. 142).  Plaintiff, represented by attorney Gary Bimberg, testified, as did vocational expert ("VE") Jennifer Turecki (Tr. 144-159, 159-164).  On November 5, 2007, Plaintiff amended her disability onset date to May 1, 2003 (Tr. 82).  On November 29, 2007, ALJ Sasena, found that Plaintiff was not disabled (Tr. 14).  On May 27, 2008, the Appeals Council denied review (Tr. 3-5).  Plaintiff filed suit in this Court on July 28, 2008.

## BACKGROUND FACTS

Plaintiff, born on April 12, 1955, was 52 at the time of the administrative decision. (Tr. 14, 52).  She obtained a GED and worked previously as a quality control production weigher. (Tr. 62, 160).  Plaintiff's DWB application alleges disability as a result of extreme "eczema-gout," high blood pressure, and numbness on the left side due to residuals from a stroke (Tr. 56).

### A.    Plaintiff's Testimony

Plaintiff testified that she last worked in July 1993 in quality control but stopped because she was unable to lift the items due to swelling and numbness caused by eczema (Tr.

---

[1] Plaintiff's husband was deceased on July 31, 1996.  Under 20 CFR 404.335(c)(1) Plaintiff must show disability within seven years of the insured's death.

146).[2] Plaintiff noted that her childhood condition worsened as she neared adulthood, but alleged that her eczema symptoms had remained static since 2003 (Tr. 146-147). Plaintiff further alleged disability due to arthritis in the lower spine and gout (Tr. 147).

Plaintiff indicated that she received 60 percent of her husband's pension and health insurance from Ford Motor Company (Tr. 147). She reported that the eczema primarily occurs in her hands but also on her arms, and mouth (Tr. 149). She alleged that during outbreaks, her hands ooze pus and cannot be bent (Tr. 149). Plaintiff stated that she is allergic to many materials, including wool, wood, sunlight, latex, and vinyl (Tr. 149). She reported wearing cloth gloves to bed and uses three different medications at various times during the day, in addition to occasional Cortisone injections from her treating physician, Dr. Simmons (Tr. 149-150).

Plaintiff also reported that she was living with her mother and aunt in 2003, but was unable to assist with the cleaning chores around the house (Tr. 150-151). She stated that she currently slowly climbed stairs for exercise and attended church (Tr. 151). She testified to having no hobbies and denied smoking or drinking alcohol (Tr. 151). She alleged that in 1993, consistent with her present condition, she was unable to lift ten pounds (Tr. 152). She reported that as of 2003, she did a lot of reading and went to the movies with family members (Tr. 152).

---

[2]"Eczema is a term for several different types of skin swelling....The most common type of eczema is atopic dermatitis." *See* MedlinePlus: Eczema, *available at* http://www.nlm.nih.gov/medlineplus/eczema.html

In response to her attorney's questions, Plaintiff stated that she was able to walk a maximum of half a block in 2003, limited by her back and foot (Tr. 153). She testified being able to stand for ten minutes and sit for 20 to 25 minutes (Tr .153). In addition to eczema, Plaintiff also reported having gout and arthritis (Tr. 154). She stated that due to allergies, she would be unable to handle most items for a significant period of time, noting that the cracking and oozing of her hands made cloth gloves only minimally useful (Tr. 154). Plaintiff also alleged that because numbness and pain had affected her grip, she would be unable to use a keyboard for a consistent period of time (Tr. 155).

Plaintiff further reported that straightening her hands for even minimal periods would cause her skin to crack (Tr. 156). She also stated that she had tenosynovitis, which had previously been mis-diagnosed as bursitis (Tr. 157).[3] Plaintiff reiterated that symptoms of eczema had remained unchanged since 2003 (Tr. 158). She also opined that as of 2003, she was unable to perform any full-time work, even a position allowing a sit/stand option, no lifting, and only occasional hand use (Tr. 158-159). Plaintiff attributed her inability to work to the periodic, but unpredictable eczema symptoms (Tr. 159).

**B.    Medical Evidence**

**1.    Treating Sources**

Plaintiff's treating notes from Everett B. Simmons Jr., M.D., state that on September 1, 1998, Plaintiff had a new problem with "eczema break out on hands" (Tr. 128). Later in

---

[3]Tenosynovitis is an "inflammation of a tendon sheath." *See* Medlineplus medical dictionary, *available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html

1998, a follow-up appointment noted that Plaintiff's hand was "doing better" (Tr. 128). June 28, 1999, treating notes also indicate "breaking out" on eyelids and itching and with October 23, 1999, showing another occurrence with Plaintiff's hands(Tr. 130-131). On May 3, 2001, Dr. Simmons noted that Plaintiff's hands were peeling (Tr. 133). However, January 9, 2003, treating notes indicate no new complaints (Tr. 133).

Treating notes from May 1, 2003, report that Plaintiff has a history of hypertension and has been prescribed Dyazide, Clonidine, and Metoprolol (Tr. 86). The notes also mention that Plaintiff has a history of eczema (Tr. 86). Treating notes from May 5, 2003, and June 3, 2003, reiterate Plaintiff has been diagnosed with eczema (Tr. 88, 95). Treating notes from July 22, 2003 state that Plaintiff believed a dark spot on the foot was eczema (Tr. 134). October 11, 2003 notes show "peeling and discoloration of pigmentation on [Plaintiff's] hands" (Tr. 135).

Treating notes from March 10, 2004 report Plaintiff was experiencing pain in the left foot (Tr. 97). On April 21, 2004, Anthony A. Bennett, M.D. performed a CT scan, diagnosing "mild foot dorsal intertarsal degenerative change" and "severe plantar calcaneal degenerative osteophytic spurring" (Tr. 100). On November 15, 2005, Dr. Simmons noted that Plaintiff's eczema was "flaring up" (Tr. 138). April 13, 2006 notes state that Plaintiff wakes up with numb and itchy hands (Tr. 139). August 21, 2006 notes state that Plaintiff could not bend her hands for a month due to swelling (Tr. 137). On October 24, 2007, Plaintiff was diagnosed with Tenosynovitis by Oakwood Hospital's emergency department (Tr. 118).

### 2. Non-treating Sources

An undated, Physical Residual Functional Capacity Assessment gave a primary diagnosis of hypertension and secondary diagnosis of eczema (Tr. 110). The external limitations checklist was left blank, but contained additional comments noting mild mitral valve regurgitation and eczema of both hands (Tr. 111-112). The postural, manipulative, visual, communicative, and environmental limitations were also left blank (Tr. 112-114). The symptoms section noted Plaintiff's allegations of limited hand movement, walking problems, and six-year use of a cane (Tr. 115).

### 3. Material Submitted After the June 21, 2007 Administrative Decision

Plaintiff attached several exhibits to her motion for summary judgment. One exhibit includes a table of services, including injections, that Dr. Simmons has performed from February 27, 1997 to October 11, 2003. (*Docket #16*, Ex. 1, 3). Another exhibit is a letter dated July 28, 2006, from Michael T. Goldfarb, M.D., a dermatologist giving a diagnosis of "chronic dermatitis on Plaintiff's hands and feet with some depigmentation of her hands from working in a chemical plant." (*Docket #16*, Ex. 2). A third exhibit includes already submitted records as well as additional treating records and February 6, 2007 imaging studies showing mild degenerative changes. (*Docket #16*, Ex. 3, 3). The last exhibit is a November 11, 2008 letter from Dr. Simmons, stating that Plaintiff has received Kenalog injections to the hands, scalp, and arms for atopic eczema from September 2000, to October 2003 (*Docket #16*, Ex. 4).

### C. Vocational Expert Testimony

VE Jennifer Tureki determined that Plaintiff had past relevant work as a "quality control production ware," a semiskilled position that was performed as light work (Tr. 160-161). The ALJ posed the following question regarding an individual of 45 to 49 years of age and limited education to tenth or eleventh grade:

> "If such an individual was limited to light work with a sit stand option, and would have to avoid concentrated exposure to chemicals, extreme heat or cold, also vibrating tools, and could occasionally climb, balance, stoop, kneel, crouch, and crawl....could the past relevant work have been done?"

(Tr. 161). The VE found that based on the above assumptions, the individual could not perform her past relevant work, primarily due to the need to avoid concentrated exposure to chemicals (Tr. 161). Given the additional limitations of a sedentary exertion level and a frequent (as opposed to *constant*) level of handling and fingering, the positions of information clerk (1000 jobs in southeastern Michigan) and surveillance system monitor (1,500) were available (Tr. 162). When the ALJ reduced the level of handling and fingering to occasional, VE Tureki testified that only 700 surveillance system monitor jobs would remain (Tr. 162). Plaintiff's attorney then posed the limitation of an infrequent level of handling and fingering, to which the VE responded that no jobs would be available (Tr. 163).

### D.   The ALJ's Decision

ALJ Sasena concluded that Plaintiff was not under a disability as defined in the Social Security Act from May 1, 2003 through November 29, 2007 (Tr. 18). He found that although Plaintiff experienced the severe impairments of eczema and degenerative joint disease, none of the conditions met or equaled an impairment listed in Appendix 1, Subpart P, Regulations

No. 4 (Tr. 14).  The ALJ determined that Plaintiff

> "Had the residual functional capacity to perform sedentary work except, she needed a sit/stand option; she was able to occassionaly climb, balance[,] stoop, kneel, crouch, and crawl; she was able to frequently use her left and right upper extremities for handling and fingering; she should have avoided concentrated exposure to chemicals, vibrating tools, and extreme heat and cold."

(Tr. 15-16).  While Plaintiff was unable to perform her past relevant work, the ALJ, citing the VE's job numbers, found that jobs exist that Plaintiff can perform (Tr. 17-18).

The ALJ supported his determination by citing Plaintiff's statements and medical history, noting that her degenerative changes in the knees and spine occurred after the end of the prescribed period (Tr. 16-17).  He also found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of symptoms due to her impairments, along with the claim that she was unable to work due to her eczema in 2003, was not entirely credible, citing the gap in the treatment history between 2001 and 2003 and the fact she was "caring for a man on dialysis" (Tr. 17).  The ALJ also did not assign significant weight to the State Agency physicians' opinions because they only relied on the available written record, did not treat or examine Plaintiff, and he had additional evidence at the time of the decision (Tr. 17).  Additionally, he adopted the VE's job numbers for occupations Plaintiff could perform (Tr. 18).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. § 405(g); *Sherrill v. Secretary of Health & Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more

than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986) (en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health & Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy. 20 C.F.R. § 416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir. 1984).

## ANALYSIS

Plaintiff agrees with the ALJ's Step Two finding, but disputes the Step Three determination that the impairments do not rise to the level of a disability. *Plaintiff's Motion for Summary Judgment*, 1. She further asserts that the hypothetical given to the VE did not adequately reflect Plaintiff's impairments. *Id.* at 2. Plaintiff also argues that evidence submitted after the appeal to this Court supports a finding of disability. *Id.* at 12.

### A. The ALJ's Step Three Determination

The ALJ used a two part analysis to evaluate Plaintiff's complaints about disabling pain. The test is:

> "[W]hether there is an underlying medically determinable physical impairment that could reasonably be expected to produce [Plaintiff's] symptoms. 20 CFR § 416.929(a). Second, if the ALJ finds that such impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities."

*Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007).

Here, Plaintiff, citing 20 CFR §404, subpart P, Appendix 1, listings 1.02B, 8.02, and 8.05, contends that, while the ALJ used the appropriate test, he did not weigh the information properly. Under 1.02, a disability is established by:

> "Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c"

20 CFR §404, subpart P, Appendix 1,1.02.

Contrary to the 1.02 argument, the record shows that Plaintiff does not have chronic *joint* pain in each of her upper extremities. Plaintiff's hand pain results from eczema which is a *skin* condition. The record indicates only two references to Plaintiff's joints. On March 10, 2004, Dr. Simmons reported Plaintiff's allegations of pain in her left foot due to degeneration. Oakwood treating notes from October, 2007 show a diagnosis of Tenosynovitis, a tendon inflammation, allegedly occurring in Plaintiff's wrists. However, both instances occurred well beyond the prescribed period and the treating notes do not mention foot or wrist pain before July 31, 2003.

Likewise, Plaintiff's reliance on listing 8.02 is unavailing. Listing 8.02 describes "ichthyosis, with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed."[4] 20 CFR §404, subpart P, Appendix 1, 8.02. Plaintiff's record does not mention rough, thick, and scaly skin or the diagnosis of ichthyosis. At most the record

---

[4] Ichthyosis is "any of several congenital diseases of hereditary origin characterized by rough, thick, and scaly skin." *See* Medlineplus medical dictionary, *available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html

mentions that the skin on her hands are peeling as a result of eczema.

Likewise, listing 8.05 states that "Dermatitis (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed" is to be considered a disability. 20 CFR §404, subpart P, Appendix 1, 8.05. "Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation." 20 CFR §404, subpart P, Appendix 1, 8.00C1. One example is "[s]kin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity." 20 CFR §404, subpart P, Appendix 1, 8.00C1a. It is not contested that Plaintiff had atopic dermatitis at the time of the alleged disability. However, the record before the ALJ made no mention of extensive skin lesions, that resisted treatment, lasting for at least three months.

Substantial evidence supports the Step Three determination. As a rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989); *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986). However, an ALJ's decision must contain specific reasons for the findings of credibility, supported by substantial evidence in the record. *Howard v. Comm'r of Social Sec.*, 276 F.2d 235, 242 (6th Cir. 2002); *Heston v. Comm'r of Social Sec.*, 245 F.2d 528, 536 (6th Cir. 2001).

The ALJ permissibly cited treating notes that mentioned occasional skin peeling, noted the gap in treatment from May 2001 to January 2003, and that Plaintiff was able to "car[e] for a man on dialysis" in rejecting Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms. More compellingly, the ALJ noted that medical findings from Plaintiff's treating physicians supported the conclusion that she could perform sedentary work as of July 31, 2003. Therefore, reviewing the record as a whole, the ALJ's decision that Plaintiff is not disabled at Step Three is supported by substantial evidence.

### B.   Evidence Submitted After the Administrative Decision

Along with Plaintiff's motion for summary judgment, she submitted four additional exhibits (*Plaintiff's Motion for Summary Judgment*, Ex. 1-4). These records consist of a table of treatments from her insurer, a letter from a consulting dermatologist, a letter from her treating physician, and additional medical records which were not reviewed by the ALJ.

The Court's review of this matter occurs under sentence six of 42 U.S.C. §405(g). A sentence six remand is appropriate upon a showing that (1) there is new evidence that is material, and (2) there is good cause for not having presented this evidence at the earlier administrative proceeding. *Bass v. McMahone*, 499 F.3d 506, 513 (6th Cir. 2007). Accordingly, this Court "may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g)." *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

### 1.   New and Material

In order for Plaintiff to satisfy the burden of proof of materiality, she must demonstrate that there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The table of services from the insurance company shows an extensive list of treatments, using injections and lesion removals, dating back to 1997. However, the relevant period is from May 1, 2003 (the alleged onset of disability date) to July 31, 2003 (the end of the prescribed period).

### a. Dr. Simmon's Letter and the Insurance Services List Constitutes "New and Material" Evidence

During this period there was one injection and lesion removal performed on July 22, 2003. The next two injections occur within three months, on August 8, 2003, and October 11, 2003. This is corroborated by Dr. Simmons's 2008 letter regarding Plaintiff's Kenalog injection treatment for atopic eczema. There is a reasonable probability that the ALJ may have reached a different disposition on the disability claim, despite the fact the subsequent injections occurred outside the period, if both exhibits had been before him and Plaintiff proved that the symptoms of atopic eczema were not responding to treatment. Therefore, the chart is new and material.

### b. Dr. Goldfarb's Letter and X-ray Analysis is Immaterial

However, the letter from Dr. Goldfarb and the x-ray analysis occur well after the prescribed period for disability. Furthermore, two of the three x-ray observations were already included in Plaintiff's treating notes. As are result, the ALJ would likely not have

come to a different conclusion of disability based on these exhibits, therefore they are not new and material.

### 2. Good Cause

Nevertheless, Plaintiff's additional documents cannot be remanded for consideration under sentence six because there is no good cause. "In order to show good cause the complainant must give a valid reason for [her] failure to obtain evidence prior to the hearing." *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)(*citing Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). In *Willis*, Plaintiff offered no explanation why additional evidence of Plaintiff's mental state could not have been provided before the hearing, thereby good cause was not shown. *Willis*, 727 F.2d at 554.

Here, Plaintiff's argument that good cause is shown merely because new counsel was appointed after the hearing is not persuasive. The table of treatments from the insurance provider and the letter from Dr. Simmons refer to the relevant period in 2003, a time well before the hearing. Plaintiff was represented by Mr. Bimberg, an attorney, at the hearing where he indicated that there was no additional evidence to be submitted for the record. Like *Willis*, the fact that the information could have been obtained before the hearing, but was not obtained by Plaintiff's counsel at the time, cannot be overcome by the argument that good cause is shown by the appointment of new representation when the case is appealed.

### C. The ALJ's Step Five Determination

Plaintiff contends that the hypothetical questions posed to the VE did not reflect her

full degree of limitation. Plaintiff claims that the ALJ omitted her chronic numbness, grip problems, chronic hand pain, constant skin peeling, and pus continually oozing from her hands from the hypothetical posed to the VE.

*Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777 (6th Cir. 1987), sets forth the Sixth Circuit's requirements for a hypothetical question. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Id.* at 779 (internal citations omitted). *See also Webb v. Comm'r of Social Sec.* 368 F.3d 629, 632 (6th Cir. 2004). The hypothetical question must be supported by record evidence. However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)(*citing Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987)).

Substantial evidence supports the ALJ's choice of hypothetical limitations. The ALJ had permissibly found that Plaintiff's testimony regarding the constant skin peeling and continually oozing pus was only partially credible. None of Plaintiff's treating records indicate that she had a problem with numbness or grip before July 31, 2003. Therefore, the ALJ made reasonable inferences of Plaintiff's credibility due to lack of medical support. Based on the record and testimony, the ALJ gave an appropriate hypothetical to the VE, taking into account Plaintiff's limitations.

In closing, this Court's conclusion recommending the grant of summary judgment to

the Commissioner is not intended to trivialize symptoms of eczema or limitations caused by degeneration. The record easily establishes that Plaintiff is unable to perform her former work. However, the question is whether the Commissioner's decision that Plaintiff was not disabled from *all* work was supported by substantial evidence. Based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen*, *supra*, the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                      S/R. Steven Whalen
                      R. STEVEN WHALEN
                      UNITED STATES MAGISTRATE JUDGE

Dated: July 31, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 31, 2009.

                      S/Andrea Teets
                      Deputy Clerk